[Civ. No. 12919.   Second Dist., Div. Two.—April 4, 1941.]

GEORGE N. FOSTER, Respondent, v. HERMAN FISHER et al., Defendants; W. G. JOHNSON et al., Appellants.

Henry E. Carter and Emmett A. Tompkins for Appellants.

Otto B. Willett for Respondent.

WOOD, J.—Appellants Day and Johnson have taken this appeal from a judgment in favor of respondent and against appellants and their co-defendant Fisher in an action brought by respondent to recover the reasonable rental value of certain oil well drilling equipment.

The action is founded upon three written agreements, all executed on January 7, 1938, although one was antedated as of September 30, 1937. The agreements provide in substance for the rental by respondent's assignor, P. W. Willett, Inc., of certain drilling equipment consisting of boilers, drill pipe, etc., to be used in the drilling of two oil wells. The consideration for the use of such equipment was to be an

"overriding royalty" of 2 per cent or 3 per cent in the production of such oil wells, depending upon the length of time the equipment was used not to exceed 120 days. In two of the agreements defendant Fisher and appellant Johnson were named as lessees, while in the third Fisher was named as the sole lessee. All three agreements were signed by Fisher alone. Although the equipment was in fact used, no papers showing royalty interests were ever issued to respondent's assignor and nothing was ever paid to him as a percentage of the production of the wells.

Appellant Day and one Dilley were lessees of certain oil property known as the Watkins lease and the Washburn lease. In August, 1937, they executed a sublease of the Watkins lease to W. H. Martgan. On October 22, 1937, Martgan sublet the Watkins lease to defendant Fisher. On December 15, 1937, Day and Dilley executed a sublease of the Washburn lease to defendant Fisher. Fisher obtained a drilling permit and with the equipment of respondent's assignor commenced the drilling operations which consisted of deepening the two wells which were already on the leased property. Defendant Johnson financed the drilling operations under an agreement with Fisher whereby he was to receive a 21 per cent overriding royalty interest in the two wells. In July, 1938, Day and Dilley repossessed the leased premises and terminated the subleases because of the failure of the wells to produce oil in paying quantities. The only evidence presented tended to prove that defendants diligently attempted to produce oil, but without success.

By this action, which was commenced on March 1, 1939, respondent sought to recover the reasonable rental value of the equipment from Fisher, Day and Johnson on the theory that they were joint adventurers or partners in the drilling of the two wells. The trial court found that Fisher, Day and Johnson were joint adventurers and awarded respondent a judgment for $4,200 as the rental value of the equipment.

■ The allegations of the complaint disclose an express contract between the parties, whereby respondent's assignor agreed to furnish certain equipment for a limited period, for which defendants agreed "to pay and deliver" a 2 or 3 per cent overriding royalty in the production of the wells. Respondent must stand upon the terms of the express agreement and must pursue the remedy permitted for such breach

of the agreement as can be shown. The ruling in *Gillin* v. *Hopkins*, 28 Cal. App. 579 [153 Pac. 724], is applicable to the present situation. In that case the plaintiff was employed by the defendant to sell certain oil stock and agreed to accept 15,000 shares of such stock as compensation for his services. Upon the failure of the defendant to deliver the stock, the plaintiff filed an action against the defendant in which he sought to recover $4,500 as the reasonable value of the services rendered. The trial court found the reasonable value of plaintiff's services to be as alleged and awarded him a money judgment. In reversing the judgment the appellate court observed: "In this case there was no express or implied contract to pay plaintiff four thousand five hundred dollars or any other amount in money. The contract was that he would accept fifteen thousand shares of stock in full as his compensation for his services in making the sale. For a breach of this contract this plaintiff has no cause of action upon an indebtedness of four thousand five hundred dollars, but only an action for damages for a breach of the contract". In the instant case, it was not shown that any oil was produced during the period prior to the forfeiture of the subleases. Indeed, it is not so alleged in the amended complaint, which contains the allegation that the wells were at the time of the filing of the complaint producing oil in commercial quantities. The only evidence before the trial court showing any production of oil from the wells in question was that at the time of the filing of the complaint and at the time of the trial the wells were producing small quantities.

When the subleases were forfeited the rights of respondent's assignor as holder of royalty interests came to an end. (*Smith* v. *Drake*, 134 Cal. App. 700 [26 Pac. (2d) 313].) Manifestly, respondent has not established the right to an award of any sum for the failure of defendants to pay a percentage of the oil produced.

It is alleged in the complaint, and found by the court to be true, that plaintiff's assignor did not receive "formally said 3% overriding royalty as provided in said contract" and that at the time the contract was executed respondent's assignor was informed by defendants that they had permission from the Commissioner of Corporations to issue "overriding royalty per cent interests". It appears that defendants did not seek a permit from the Corporation Commissioner. It was

the duty of defendants to procure a proper permit from the commissioner and to deliver proper certificates to respondent's assignor. (*Domestic & Foreign Pet. Co.* v. *Long,* 4 Cal. (2d) 547 [51 Pac. (2d) 73].) Their failure so to do constituted a breach of the contract. ■ The measure of damages for the breach of the contract in this respect is not the reasonable rental value of the equipment. Although there is no direct evidence on the point it appears by necessary implication that the royalty interests of plaintiff's assignor were valueless and that no actual damages were suffered, for approximately eight months before the present action was commenced the subleases were terminated and the premises repossessed because of the failure of the wells to produce oil in paying quantities. For the breach of the contract in this respect plaintiff is, however, entitled to recover at least nominal damages. (Civ. Code, sec. 3360.)

■■ The appealing defendants contend that they were not joint adventurers with defendant Fisher as found by the trial court. Disregarding the conflicts and accepting as true the evidence most favorable to respondent, there is substantial evidence to support such finding as to appellant Day, who took an active part in the discussions leading up to the execution of the agreements upon which this action is based and actually represented himself to respondent's assignor as a partner in the drilling operations. On several occasions Day informed respondent's assignor that he was in charge of the issuance of the royalty interests and would see that the agreed interests were delivered as soon as possible. Such evidence is sufficient to support a finding that appellant Day was a partner by estoppel within the meaning of section 2410 of the Civil Code. Although it is true that estoppel must ordinarily be pleaded, respondent's failure to do so is not fatal, for the evidence upon which the estoppel is based was admitted without objection and the defect in the pleading was therefore waived. (*Chain* v. *Ehrman,* 92 Cal. App. 334 [268 Pac. 438]; *Woody* v. *Security Trust & Savings Bank,* 137 Cal. App. 29 [29 Pac. (2d) 898].)

■ There is no evidence of an express agreement of joint adventure or partnership as between appellant Johnson and his co-defendants. His liability, if any, must therefore be predicated upon an estoppel. The evidence, however, is insufficient to support a finding that he was a joint adventurer

or partner by estoppel. It does not appear that he ever represented himself to be a partner with Fisher and Day to plaintiff's assignor or any other person, or consented that another could represent him to be such, within the meaning of section 2410 of the Civil Code. His sole part in the transaction was to finance the drilling operations, for which he was to receive an agreed royalty interest. The fact that he paid bills which were submitted to him by Fisher and guaranteed the payment of other bills did not constitute him a partner by estoppel. Such conduct was entirely consistent with his agreement to finance the drilling. He was interested in the drilling and was present on the leases on numerous occasions but there is no evidence that he took part in the general management of such operations or in the hiring and firing of employees. We conclude therefore that the evidence is insufficient to support the finding that appellant Johnson was a joint adventurer or partner with Fisher and Day.

The judgment against the appealing defendants is reversed.

Moore, P. J., and McComb, J., concurred.