[Civ. No. 16480. First Dist., Div. One. Nov. 9, 1955.]

W. A. ROBISON, as Administrator, etc., Appellant, v. HERBERT HANLEY et al., Respondents.

Phil F. Garvey for Appellant.

Herbert Chamberlin for Respondents.

BRAY, J.—Plaintiff's intestate[1] brought an action to quiet title to a house and lot in San Francisco. Defendants cross-complained to quiet their title to the property. From a judgment in defendants' favor, plaintiff appeals.

## QUESTIONS PRESENTED

Sufficiency of the evidence. The evidence establishes that the merits and equities are all on the side of defendants. Plaintiff relies upon technical contentions that a certain trust was never terminated or repudiated.

## EVIDENCE

Plaintiff denied much of defendants' testimony concerning the facts of the case. Plaintiff's testimony, however, was highly evasive, contradictory, unsatisfactory and disproved by written documents signed by him. In 1936 plaintiff owned a lot upon which he had built a home. He had rented the property to one Jankelson. It was encumbered by a mortgage, a deed of trust, a judgment lien and a tax lien, totaling almost $8,000. A notice of default under the deed of trust had been given. Due to the illness of plaintiff's wife, they decided to move to Los Angeles. Defendant[2] was a licensed insurance broker and real estate salesman. Plaintiff told defendant that he was about to lose the property and wanted to "salvage something out of the wreckage." Plaintiff and

---

[1] The original plaintiff has since died and his administrator was substituted as plaintiff. Where plaintiff is mentioned herein, it refers to the original plaintiff.

[2] Unless otherwise stated, "defendant" refers to defendant Herbert Hanley, as all the transactions were with him.

his wife[3] conveyed the property to defendant upon the understanding expressed in a letter to them dated July 27, 1936. This stated that the deed "is for the purpose of selling the above property to a third party; profits from any sale are to be divided equally between ourselves." The then tenant was to be allowed to remain 120 days "if necessary." The rental to be paid by him was not to be a part of the profits but was to go to plaintiff. In case a sale was not consummated "Deed is to be returned" to plaintiff. Defendant testified the asking price for the property was to be around $8,000, plaintiff, that he suggested a price of $20,000 but did not actually put a price on it, that defendant was to submit offers when he got them. Defendant interested one Rusalen, who signed an agreement dated August 14, 1936, to buy the property for $8,000. On August 29th this agreement was superseded by another agreement signed by Rusalen, for the same purchase price but different terms. This agreement was in the form of the usual "Uniform Agreement of Sale" and contained an "Approval" signed by plaintiff. Plaintiff denied that he ever heard of Rusalen or of Rusalen's offer to buy, and claimed that he signed the approval in blank. Rusalen was unable to finance the purchase of the property and the sale fell through. After making efforts to find other buyers, defendant discussed with plaintiff purchasing the property for himself and a price of $125 over the total amount of the encumbrances was agreed upon. At this time the amount of the encumbrances was $8,165.72. Defendant assumed the payment thereof and gave plaintiff his promissory note[4] dated December 14, 1936, for $119.78, debiting plaintiff $5.22 due defendant for an insurance premium on other property. In a short time, defendant executed new encumbrances, thereby releasing plaintiff from all obligations of the old. Plaintiff admitted that he knew that defendant moved into the house in December, 1936. Defendant paid him for a refrigerator in the house. From then on, plaintiff never received nor asked for an accounting of any kind from defendant. Defendant paid all taxes, all interest and principal of the indebtedness against the property, made repairs and improvements totaling between $3,000 and $4,000. May,

---

[3]Plaintiff's wife died prior to suit.

[4]Plaintiff denied receiving this note, yet he cashed defendant's check dated May 4, 1938, bearing the notation "Balance due on note dated 12-14-36, $9.60. This payment, $5. Balance due, $4.60. Balance due on refrigerator account, $35. This payment, $5. Balance due, $30."

1945, defendant deeded the property to himself and wife as joint tenants. From 1936 until time of suit (August, 1952) defendant did plaintiff's insurance work on other property, sending him statements therefor, which plaintiff paid. It is not necessary to detail all the evidence corroborating defendant's testimony that plaintiff in 1936 sold the property to him. Plaintiff's only excuse for not making any claim to the property or to an accounting of what defendant was doing with it, is that he had lost defendant's letter of July 27, 1936, and did not find it until shortly before filing suit.

## TERMINATION OF TRUST

Plaintiff contends that the court's findings that the trust expressed in the last mentioned letter was terminated and repudiated are not supported by the evidence because (a) there was no written memorandum of the sale to defendant; (b) a trustee may not sell trust property to himself.

(a) *No writing.*

Plaintiff contends that under sections 2280, Civil Code, and 1971, Code of Civil Procedure, a trust may be terminated only by a writing. Section 2280 provides: ". . . every voluntary trust shall be revocable by the trustor by writing filed with the trustee." Section 1971, Code of Civil Procedure, provides: "No estate or interest in real property, other than for leases for a term not exceeding one year, nor *any trust* or power over or concerning it, or in any manner relating thereto, can be created, granted, *assigned, surrendered,* or *declared,* otherwise than by *operation of law, or* a conveyance or other *instrument in writing,* subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized by writing." (Emphasis added.)

That a trust may be terminated, surrendered or relinquished by an oral agreement of trustor and beneficiary is discussed in *Johnson* v. *Altman,* 96 Cal.App.2d 467 [215 P.2d 768], and *Nicolds* v. *Storch,* 67 Cal.App.2d 8 [153 P.2d 561]. In the latter case the court said (p. 15): "In a note in 106 American Law Reports 1315, it is also said that while there is some conflict in the cases the majority of courts hold to the principle that an oral contract to surrender, rescind, or abandon the beneficial interest arising under a resulting trust is not rendered ineffective or unenforceable by the statute of frauds. Cases in which this view was taken are there cited." However, in neither case was the question directly

decided because of the applicability of the doctrine of equitable estoppel to the facts presented. In the Johnson case the court said, referring to the facts of the case, quoting from 106 A.L.R. 1318 (p. 470): " 'Whatever may be the nature of the trust relation, all courts agree that where there has been some performance by the trustee in accordance with the oral contract, or where his position has been changed as a result of it, the surrender is effective irrespective of the requirements of the Statute of Frauds.' " In the Nicolds case the court referred to the above note in 106 A.L.R. 1318[5] and stated (p. 17): "These findings bring plaintiff within the rule that a trust may be extinguished by a parol surrender by the *cestui que trust* in any case in which the trustee so acts in reliance upon the surrender as to make it inequitable for the cestui to assert his interest, and the rule that performance of an oral agreement within the statute of frauds takes the case out of the statute."

1 Witkin's Summary of California Law, 6th edition, page 57, states: "Where the defendant by his words or conduct represents that he proposes to stand by the oral contract, and the plaintiff, in reliance thereon, changes his position, the defendant will be *estopped* to set up the bar of the statute."

In our case we deem it unnecessary to determine this question[6] for here the facts cry out loudly for the application of the doctrine of equitable estoppel. While the defense of equitable estoppel was not pleaded, the evidence upon which it was based was admitted without objection and therefore the necessity for pleading it, if such necessity existed, was waived. (See *Foster* v. *Fisher*, 44 Cal.App.2d 33, 37 [111 P.2d 935].) It would be unconscionable

---

[5]This note is supplemented in 173 A.L.R. 282.

[6]See, however, 89 Corpus Juris Secundum 938: "A trust may be extinguished by a parol surrender by the beneficiary in any case in which the trustee so acts in reliance on the surrender as to make it inequitable for the beneficiary to assert his interest." See also *Nicolds* v. *Storch*, *supra*, 67 Cal.App.2d 8, where the court considered the case of *Millard* v. *Hathaway*, 27 Cal. 119, cited by plaintiff, which contains dicta that a release by the payor under a resulting trust must be in writing (p. 17): "It is said in 12 California Jurisprudence, pages 926-927, that a fully executed parol contract cannot be affected by the statute of frauds, and cannot be assailed either by the parties or by third persons on the ground that it is not in writing; that the rule is the same where full performance is by one of the parties only; and that the rule is sometimes placed on the ground of estoppel." These discussions refer to resulting and constructive trusts. In our case we have an express one, and the rule concerning repudiation of an express trust may be different from that dealing with the other types of trusts.

here to deprive defendant of the property which the court found he purchased from plaintiff and upon which he assumed all of plaintiff's indebtedness, had improved it and paid the taxes thereon, merely because of a technical application of the statute of frauds. ▆ It should be pointed out also that the statute of frauds (Civ. Code, § 1091) does not apply where the oral agreement is fully executed. See 23 California Jurisprudence 2d 399, which states: ''An oral contract which has been fully executed is not affected by the provisions of the statute of frauds. In such a situation the contract is not assailable, either by the parties to the agreement or by a third person, on the ground that it is not evidenced by a writing. The rule applies even when full performance has been rendered by only one of the parties. It is sometimes justified on the ground of estoppel.''

(b) *Trustee may not sell trust property to himself.*

▆ Citing the general rule set forth in section 2229, Civil Code, in section 170, Restatement of Trusts, page 431, and in certain cases, to the effect that a trustee may not deal with trust property for his own profit, plaintiff contends that the sale to defendant was absolutely void. Plaintiff overlooks the exception to that rule set forth in section 2230, Civil Code: ''Neither a trustee nor any of his agents may take part in any transaction concerning the trust in which he or anyone for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary, except as follows: 1. When the beneficiary, having capacity to contract, with a full knowledge of the motives of the trustee, and of all other facts concerning the transaction which might affect his own decision, and without the use of any influence on the part of the trustee, permits him to do so; . . .'' After quoting that section, the court in *Malinow* v. *Dorenbaum,* 51 Cal. App.2d 645 [125 P.2d 554], said (p. 652): ''Although appellant challenges the applicability of this section of the code to the case at bar, we believe that it does apply here. As has been seen, appellant acquiesced and actively aided decedent in her claims adverse to his interest and it is clear that he did so with full knowledge of all the facts which might affect his decision. [Citation.] Moreover, it is well settled that where a beneficiary has consented to a course of conduct by the trustee, a rule permitting the cestui to attack the transaction later on would, as the court said in *Colton* v. *Stanford,* 82 Cal. 351, 378 [23 P. 16, 16 Am.St.Rep.

137], 'convert a rule intended to prevent fraud into one creating an incentive to and a cover of fraud.' " All the elements required by section 2230, subdivision 1, Civil Code, appear in our case.

## SPECIFIC FINDINGS

Plaintiff in addition to challenging the findings on the issues heretofore discussed, contends there is no evidence to support certain other findings. The court found true the allegations in defendants' answer and cross-complaint that the purchase price was "about $8300." The exact price came to $8,290.72. Obviously, this amount was "about $8300." █ Moreover, the record fails to show that plaintiff requested a more specific finding. His objection, now made upon appeal, comes too late. (*Goss* v. *Fanoe,* 114 Cal.App.2d 819, 824 [251 P.2d 337].) The same is true of his contention that the finding of adverse possession for more than 15 years is ambiguous.

The court found that plaintiff's claim was barred by practically all the statutes of limitation, by laches and adverse possession. Plaintiff's contention that the evidence does not support such findings is based upon (1) the matters hereinbefore discussed, and which we have determined adversely to him, and (2) the contention that there was no repudiation of the trust until shortly before commencement of suit when defendant refused to comply with plaintiff's request to transfer the property to him. █ As to these defenses, there can be no question that the law is well settled that where, as here, there was an express trust created, the time required to start the running or beginning of each of them does not start until there is an express repudiation of the trust communicated to the trustor. Here the evidence clearly shows such a repudiation as far back as December, 1936. See *Smith* v. *Sheffey,* 113 Cal.App.2d 741, 744 [248 P.2d 959], to the effect that a finding of laches is supported by evidence of acts of dominion exercised over the land; and *Eisenmenger* v. *Eisenmenger,* 59 Cal.App.2d 536 [139 P.2d 63], discussing repudiation of a trust agreement and the starting of the period of limitation and of adverse possession.

The court found that both defendants were the owners of the property since December 12, 1936. Plaintiff contends there is no evidence that Mrs. Hanley's ownership started that day, as her name did not appear of record until Herbert deeded the property to her and himself as joint tenants, in 1945. As the defendants were married in 1936 when Herbert purchased the property, presumably it became community

property and Mrs. Hanley's interest would attach. Her record interest, however, appeared in 1945, so, if there is any error in the finding it is a completely immaterial one.

We deem it necessary to point out that plaintiff in his opening brief violated rule 15 (a), Rules on Appeal, which requires, in part, "The statement of any matter in the record shall be supported by appropriate reference to the record." In over three and a half pages of "Summary of material facts" there is not one reference to the record. Were it not for the assistance given the court in defendants' brief, it would have been a considerable task for this court to relate plaintiff's summary with the record. Plaintiff contends that as there is no express requirement in rule 13 that there be references to the record he is only required to do so "in the separate points required in the argument." Rules 13 and 15 (a) must be read together. That the statement in the briefs of any matter in the record must be supported by an appropriate reference to the record is well established. See *Bruce* v. *Bruce*, 121 Cal.App.2d 661, 664 [263 P.2d 895]; *Johnson* v. *Klein*, 127 Cal.App.2d 577, 578 [274 P.2d 209]. This court could, and probably should, have required plaintiff to provide the missing references.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.